(635 P.2d 1265)

No. 52,591

FRITZ BRANNER, d/b/a/ FRITZ BODY SHOP, *Appellee,* v. DAVID CROOKS and MIDWESTERN DELIVERY SERVICE, *Defendants,* and AETNA LIFE AND CASUALTY COMPANY, *Appellant.*

Opinion filed November 13, 1981.

*Keith Martin,* of Payne & Jones, Chartered, of Olathe, for appellant.

*Wm. D. Wingfield,* of Wexler and Wingfield, of Shawnee Mission, for appellee.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and HARMAN, C.J. Retired, assigned.

HARMAN, C.J. Retired: Here a body shop owner has sued the owner of a damaged automobile and his collision carrier for repairs on the vehicle. Plaintiff took default judgment against the automobile owner. Trial to the court resulted in judgment for plaintiff against the insurance carrier for the amount of the repair bill. The insurer alone has appealed.

On December 6, 1979, an automobile owned by defendant, David Crooks, owner of Midwestern Delivery Service, was involved in a collision. The vehicle was taken to the Fritz Body Shop, a business owned by appellee Fritz Branner. Appellant Aetna Life and Casualty Company, which had collision coverage on the Crooks automobile, employed an independent appraisal service to appraise the damage to the car. This appraiser prepared a written appraisal indicating damage in the amount of $1,773.03.

Fritz signed the appraisal form which contained this language: "The Below Agrees to Make Guaranteed Repairs As Per Appraisal When Authorized By Owner." Thereafter, per agreement with Crooks to make only such repairs as would render the vehicle operable and to omit cosmetic repair, appellee fixed the vehicle at a cost of $1,573.00.

Before releasing the vehicle to Crooks, appellee Branner telephoned appellant's office about the transaction and he testified he was told "[t]hat the check was in the mail."

Appellant's adjuster to whom appellee talked over the phone testified that, as reflected by notes made contemporaneously with the call, she told him that the check had been sent to the insured with only the insured's name on it. Appellee denied he was told his name would not be on the check; instead, he thought his name would be on the check because "[i]t's the general run." He thereupon responded affirmatively to this question, permitted over objection:

"Is it the general custom in trade in your job when you repair collision losses for insurance companies where the repairs are complete and the company is aware that you're concerned with payment, is it the custom in this community in your experience to have your shop guarded on the settlement draft by listing your name on the draft?"

Appellee released the vehicle to Crooks. Crooks cashed appellant's check, which was for $1,673.03 (amount of the damage appraisal less $100.00 policy deductible), but unfortunately for the litigants here, never paid appellee.

The trial court's judgment against appellant for $1,473.03 was predicated on the following:

"The Court finds that the estimate which was a binding obligation on the part of the plaintiff was procured at the request of the defendant, the Aetna Insurance Company, submitted to them and that the work was done and performed relying upon a custom and practice within the community that when repairs are completed upon a vehicle the drafts are to be made payable not only to the insured but to those who make the repairs. That the plaintiff relying upon this parted with possession of the property without filing a mechanic's lien to protect himself and therefore was damaged to that extent."

Appellant asserts, for various reasons, that the appraisal document did not constitute a contract between appellee and appellant. We agree. The appraisal is merely an estimate of the damage. Under its policy appellant had three options in settling its liabil-

ity. It could repair the damage to the vehicle, replace it or pay the insured the cash value of the loss. It chose the latter.

As between the appellant and appellee, none of the rudiments of a contract was present by reason of the appraisal form. The independent appraiser had no authority to bind appellant in any settlement nor did he attempt to exert any (by way of further elucidation, it may be noted that below the signature of Fritz on the appraisal form this language appears in large boldface type: "THIS IS NOT AN AUTHORIZATION FOR REPAIRS"); there was no mutuality of obligation between the present litigants, nor was there any obligation on anyone except appellee once the car owner elected to have him repair the damage.

Appellant also challenges the propriety of the trial court's action in finding a contract from trade practices and custom in the community that insurers' drafts for repairs on insured vehicles are made payable to both the insured and the one making the repairs. This finding apparently derived from appellee's testimony already quoted and was made despite testimony by appellant that it puts the repairer's name on checks for collision coverage only when directed by an adjuster or when making supplemental payments for repairs which have been made after an adjuster has indicated that further repairs were necessary. The finding was also made despite appellant's proffer (rejected) of copies of its records showing that appellee in fact had repaired collision damage on another vehicle owned by defendant Crooks and insured by appellant, and that appellant had put only Crooks' name on its settlement check dated September 1, 1979, and, further, despite appellee's testimony that during the previous two years he had repaired several vehicles for Crooks and had always been paid by Crooks' personal check or a Midwestern Delivery Service check.

A custom or trade usage cannot create a contract when the parties themselves have made none. The proper office of trade usage or custom is to explain technical terms in contracts to which peculiar meanings attach; to make certain that which is indefinite, ambiguous or obscure; to supply necessary matters upon which the contract itself is silent; and generally to elucidate the intention of the parties when the meaning of the contract cannot be clearly ascertained from the language employed. *McSherry v. Blanchfield,* 68 Kan. 310, Syl. ¶¶ 2, 3, 75 Pac. 121

(1904). See also *Wendling v. Puls,* 227 Kan. 780, 786, 610 P.2d 580 (1980).

There being no contract of any kind between the parties here, none can be derived from any purported trade custom. Appellant was entitled to judgment.

Judgment reversed.