**Elden C. KIMBALL, aka Eldon C. Kimball, Plaintiff and Respondent,**

v.

**Lewis E. CAMPBELL, Defendant and Appellant.**

No. 18904.

Supreme Court of Utah.

March 27, 1985.

R. Douglas Credille, T. Quentin Cannon, Salt Lake City, for defendant and appellant.

H. Ralph Klemm, Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant Lewis E. Campbell seeks reversal of a judgment awarding plaintiff Elden C. Kimball damages for breach of contract. Campbell argues that the trial court erred in considering parol evidence in interpreting the terms of a written agreement between the parties. Campbell also seeks a remand in order to pursue a counterclaim not asserted at trial for damages arising out of Kimball's alleged reciprocal breach of the contract. We hold that the trial court did not err in considering parol evidence and that the resulting findings and conclusions are supported by substantial record evidence. We therefore affirm. We also find no basis for a remand.

Both Kimball and Campbell held liens on a piece of real property known as "The Office." Both liens were lower in priority than at least one other lien on the property held by Murray First Thrift ("MFT").[1] MFT had scheduled a trustee's sale. Prior to the sale, Campbell purchased MFT's entire interest in The Office, but decided to proceed with the trustee's sale to clear subsequent liens.

These facts are undisputed. However, with minor exceptions, the remaining facts were the subject of directly conflicting testimony between Campbell and Kimball. The trial court accepted Kimball's version. We recite the facts as found by the trial court.

At the January 22, 1981 sale, Campbell bid $43,000. To his surprise, Kimball then bid $45,000. Kimball had adequate credit to permit him to complete the purchase at the $45,000 price. Campbell requested a delay in bidding and offered to pay Kimball $10,000 in consideration of the withdrawal of his bid. Kimball accepted. The auctioneer then sold the property to Campbell by rejecting Kimball's higher bid upon the fictional premise that he did not have the $45,000.

After the sale, Kimball and Campbell drew up a rather cryptic agreement providing that Kimball would withdraw his $45,000 bid and execute and deliver a lien release on The Office "forthwith" and that in consideration, Campbell would pay Kimball $10,000 on or before February 13, 1981. The agreement was signed on January 22, 1981, after counsel for both parties reviewed it.

The trial court found that, at the time the agreement was signed, the parties intended that Kimball would execute and deliver the lien release as soon as Campbell tendered $10,000; that Kimball was at all times ready to give the release upon receipt of the $10,000; that Kimball contacted Campbell's attorney several times to ask if the $10,000 was available and was told that it was not; and that Kimball eventually gave Campbell's attorney the lien release on or about February 15th so that there would be no hesitancy on Campbell's part to pay the $10,000.

Kimball and Campbell were the only witnesses at trial. Kimball testified to the facts as found by the trial court, while Campbell asserted that Kimball's obligation to furnish a release "forthwith" was a condition precedent to his obligation to pay the $10,000 and that his receipt of the lien release on or before February 1, 1981, was required by the term "forthwith." Kimball testified that there was no such understanding. In essence, the parties' characterization of their intent regarding performance under the contract was flatly contradictory.

1. MFT was a trustee under two separate trust deeds. The first was dated July 10, 1978, in the amount of $30,162 and the second was dated May 16, 1979, in the amount of $32,174. The judgment lien held by plaintiff was docketed on April 16, 1979, in the amount of $35,000 and, therefore, apparently came between MFT's first and second liens on the property.

On appeal, Campbell argues that this Court should construe the contract in his favor as a matter of law, without deference to the trial court's findings. He asserts that the contract unambiguously established that Kimball's obligation to furnish the partial release was a condition precedent to Campbell's obligation to pay and that Kimball's failure to comply with that condition was a material breach of the agreement that allowed Campbell to treat the agreement as terminated.

A contract's interpretation may be either a question of law, determined by the words of the agreement, or a question of fact, determined by extrinsic evidence of intent. If a trial court interprets a contract as a matter of law, we accord its construction no particular weight, reviewing its action under a correctness standard. *See Provo City Corp. v. Nielson Scott Co.,* Utah, 603 P.2d 803 (1979). However, if the contract is not an integration or is ambiguous and the trial court proceeds to find facts respecting the intentions of the parties based on extrinsic evidence, then our review is strictly limited.

> [T]his Court is obliged to review the evidence and all inferences that may be drawn therefrom in a light most supportive of the findings of the trier of fact. The findings and judgment of the trial court will not be disturbed when they are based on substantial, competent, admissible evidence.

*Car Doctor, Inc. v. Belmont,* Utah, 635 P.2d 82, 83–84 (1981) (citations omitted). *See also Nupetco Associates v. Jenkins,* Utah, 669 P.2d 877 (1973).

In the present case, the parties appear to have intended the written agreement to be an integration, although the trial court made no finding on the issue. In any event, the writing was plainly ambiguous with respect to the timeliness and order of the parties' performance. Both of these issues raised questions of fact. *See Asay v. Rappeleye,* Utah, 593 P.2d 132, 133 (1979). Because of this ambiguity, parol evidence that explained the parties' intent and did not contradict the terms of the

written contract was properly considered. *F.M.A. Financial Corp. v. Hansen Dairy, Inc.,* Utah, 617 P.2d 327, 329 (1980); *Bullfrog Marina, Inc. v. Lentz,* 28 Utah 2d 261, 266–67, 501 P.2d 266, 270–71 (1972).

Whether a promise is conditional depends upon the parties' intent, which is derived from "a fair and reasonable construction of the language used in light of all the circumstances when [the parties] executed the contract." *Creer v. Thurman,* Utah, 581 P.2d 149, 151 (1978). The trial court found, based upon Kimball's testimony, that the delivery of the lien release by Kimball was not a condition precedent to the payment of $10,000 by Campbell. We will not disregard that finding in favor of Campbell's conflicting testimony. Because the trial court's findings are supported by substantial evidence, we affirm the judgment for Kimball.

Campbell also asks that we remand this case to enable him to establish his damages flowing from Kimball's alleged breach of the subject contract. We decline to do so for two reasons. First, Campbell's counterclaim was compulsory under Rule 13(a) of the Utah Rules of Civil Procedure because it arose out of the transaction that is the subject matter of plaintiff's claim. Therefore, his failure to file a counterclaim resulted in a waiver. *See Slim Olsen, Inc. v. Winegar,* 122 Utah 80, 84, 246 P.2d 608, 610 (1952). Second, Campbell's claim for damages can be sustained only under his interpretation of the terms of the contract, which we have declined to adopt. Therefore, Campbell has no claim for damages as a matter of law.

Affirmed.

HALL, C.J., and HOWE, STEWART and DURHAM, JJ., concur.