**CRAIG FOOD INDUSTRIES, INC.,**
**Plaintiff and Respondent,**

v.

**George WEIHING and Arlene Weihing,**
**dba Green River Taco Time,**
**Defendant and Appellant.**

No. 860192–CA.

Court of Appeals of Utah.

Dec. 3, 1987.

Stephen W. Cook, Cook & Wilde, P.C., Midvale, for defendant and appellant.

David J. Knowlton, Ogden, for plaintiff and respondent.

Before BILLINGS, DAVIDSON and JACKSON, JJ.

## OPINION

BILLINGS, Judge:

George Weihing (Weihing) appeals from the trial court's award of $4,267.76 to Craig Food Industries, Inc. (CFI) for Weihing's refusal to join an advertising co-op in violation of the parties' franchise agreement. We affirm.

## FACTS

CFI is the area licensor for the Taco Time restaurant chain. In May 1977, CFI and Weihing entered into a franchise agreement, allowing Weihing to operate a Taco Time in Green River, Utah. Under the agreement, Weihing was obligated to pay a $10,000 fee for the right to operate the Taco Time. Weihing was also obligated to pay CFI a royalty charge of three and one-half percent (3½%) of his gross receipts. Paragraph 18 of the franchise agreement also provided:

> 18. *Advertising.* At all times the Operator will conduct the business which is the subject of this franchise under the name "TACO TIME" and will advertise his "TACO TIME" restaurant and its services on a scale consistent with the volume of his business and in keeping with practical business practices. In so advertising, the Operator will utilize all advertising formats, formulas, and programs furnished to the Operator by CFI. *It is understood that CFI may desire to cause Operators in a given area to join into a uniform program of promoting given products or services either through sales, discounts, specials or other promotional devices. The Operator will participate in any such procedures upon the request of CFI.* (Emphasis added).

In 1981, CFI established Ten State Area Advertising Association, Inc. (Ten States), a non-profit Utah corporation, and requested its franchisees to enter a three-party agreement to participate in this joint advertising effort. CFI wrote Weihing, asking him to join Ten States and enclosed a copy of the proposed three-party agreement. Weihing refused to participate. To compel Weihing to fulfill what CFI believed were Weihing's obligations under paragraph 18, CFI filed suit.

In its complaint, CFI alleged (1) that Weihing was obligated, pursuant to paragraph 18 of the franchise agreement, to advertise his Taco Time on a scale consistent with the volume of business, and to participate in a uniform advertising initiative with Ten States and, (2) that Weihing failed to provide profit/loss statements required under the franchise agreement.

At the bench trial, Weihing claimed he was led to believe CFI would advertise his restaurant out of the royalties and the initial franchise fees. Despite this contention, Weihing testified he advertised his Taco Time locally by purchasing an ad in the high school yearbook, and by putting a small float in a local parade, costing, in total, approximately $100.00. Two "experts," George Shupe and Naomi Duman, testified on Weihing's behalf, claiming Weihing's efforts were consistent with sound business practices in southeastern Utah.

CFI, in rebuttal, introduced into evidence, over Weihing's objections, pro formas,[1] which stated that the Taco Time operator would pay 2% of gross sales for advertising in addition to royalty payments. These pro forma documents were given to Weihing prior to the execution of the franchise agreement. CFI also submitted expert testimony, again over Weihing's objections, regarding advertising standards in the fast-food industry, and the interpretation of paragraph 18.

The lower court found that Weihing failed to provide the requisite profit/loss statements mandated by the franchise agreement. The court also found that paragraph 18 of the franchise agreement

---

1. Pro formas are used to describe accounting, financial, and other statements or conclusions based upon assumed or anticipated facts. Black's Law Dictionary 1091 (5th ed. 1979).

empowered CFI to compel Weihing to join Ten States. The court awarded CFI $4,267.76 in damages for Weihing's refusal to join the advertising co-op.

Several issues are raised on appeal:

1. Is paragraph 18 of the franchise agreement ambiguous such that the trial court properly admitted extrinsic evidence to ascertain its meaning?

2. If yes, was the following evidence properly admitted to ascertain the meaning of paragraph 18:

   a. expert opinion as to the meaning of the franchise agreement?

   b. industry advertising standards?

   c. pro formas showing 2% of gross profits was earmarked for advertising?

3. In light of the evidence that was properly admitted, did the trial court correctly interpret paragraph 18?

4. Were damages properly calculated and assessed in CFI's favor?

## IS PARAGRAPH 18 AMBIGUOUS?

The trial court's actions indicate the court made a threshold legal determination that paragraph 18 of the franchise agreement was ambiguous. Consequently, and over Weihing's objections, it admitted extrinsic evidence to ascertain the meaning of this provision. On appeal, Weihing contends the meaning of paragraph 18 can be gleaned from its language. Therefore, the trial court, according to Weihing, erred in admitting parol evidence. We disagree.

■ Parol evidence is admissible to clarify facial ambiguity of a contract. *Union Bank v. Swenson*, 707 P.2d 663, 665 n. 1 (Utah 1985). Whenever there is uncertainty or incompleteness with respect to what the parties' rights and duties under the contract are, extrinsic evidence is permissible to determine those matters. *Ewell & Sons, Inc. v. Salt Lake City Corp.*, 27 Utah 2d 188, 193, 493 P.2d 1283, 1286 (1972).

Paragraph 18, as previously stated, provides in its entirety:

18. *Advertising.* At all times the Operator will conduct the business which is the subject of this franchise under the name "TACO TIME" and will advertise his "TACO TIME" restaurant and its services on a scale consistent with the volume of his business and in keeping with practical business practices. In so advertising, the Operator will utilize all advertising formats, formulas, and programs furnished to the Operator by CFI. It is understood that CFI may desire to cause Operators in a given area to join into a uniform program of promoting given products or services either through sales, discounts, specials or other promotional devices. The Operator will participate in any such procedures upon the request of CFI.

■ We find upon review that paragraph 18 is ambiguous with respect to the parties' obligations; specifically, it is ambiguous as to the amount of advertising in which franchisees must engage, the nature of "a uniform program of promoting given products or services either through sales, discounts, specials or other promotional devices," and whether CFI can compel its franchisees to participate in these ventures. Therefore, we find the trial court properly admitted parol evidence to clarify these matters.

Given that parol evidence was admissible, we now must determine if the trial court correctly admitted (1) expert testimony regarding the meaning of the franchise agreement; (2) industry advertising standards; and, (3) pro forma assumptions showing 2% of gross receipts was earmarked for advertising.

### A. Admissibility of Expert Testimony

On appeal, Weihing contends the trial court improperly admitted Gordon Jacox's expert opinion as to the meaning of paragraph 18, arguing the opinion evidence was elicited without proper foundation. Weihing's contention is without merit.

■ A trial court has considerable discretion in determining whether expert testimony is admissible. *Dixon v. Stewart*, 658 P.2d 591, 597 (Utah 1982). Generally, expert testimony is admissible if the matter is not within the knowledge of the trier of

fact or concerns a subject not within average experience, and it will aid the trier of fact. *Id.*; *see* Utah R. Evid. 702. Furthermore, it is within the trial court's discretion in determining whether the "expert" is qualified to give an opinion on a specific matter. *Wessell v. Erickson Landscaping Co.*, 711 P.2d 250, 253 (Utah 1985).

■ We find the trial court acted within its discretion in qualifying Gordon Jacox as an "expert." Jacox has a Ph.d. in business administration and has consulted for a large number of fast-food franchise operations. Given his background, Jacox could qualify as an expert and testify on the proper construction of standard language used in fast-food franchise agreements.

## B. Admissibility of Industry Standards

Weihing also argues industry advertising standards were improperly admitted, claiming such evidence was irrelevant. We again reject Weihing's contention.

■ Trade usage or custom is permissible to explain technical terms in contracts to which particular meanings attach; to make certain that which is indefinite, ambiguous or obscure; to supply necessary matters upon which the contract itself is silent; and generally to elucidate the intention of the parties when the meaning of the contract cannot be clearly ascertained from the language. *Branner v. Crooks*, 6 Kan. App.2d 813, 635 P.2d 1265, 1268 (1981); *Arnold v. Cesare*, 137 Ariz. 48, 668 P.2d 891, 894 (Ct. App. 1983); *see also Havens v. Safeway Stores*, 235 Kan. 226, 678 P.2d 625, 629 (1984).

■ At trial, substantial testimony of fast-food advertising industry standards was introduced by *both* parties. CFI's experts testified in detail concerning the amount of advertising required for the volume of business both in the Taco Time franchise chain as a whole, and in small towns, such as Green River. An expert stated that anywhere from 2% to 8% of sales would be a "normal" expenditure. We find the trial court acted well within its discretion in admitting the testimony pertaining to advertising standards used by

fast-food franchise operations offered by both parties.

## C. Admissibility of Pro Formas

Weihing also argues the pro forma assumptions were improperly admitted, claiming the pro formas were irrelevant in construing paragraph 18. We find this claim of Weihing's without merit.

■ At trial, Weihing maintained he was led to believe his royalties and initial franchise fee were all he needed to contribute towards advertising. He also claimed this belief was consistent with paragraph 18 of the franchise agreement. However, the pro formas directly controvert Weihing's testimony and his interpretation of the franchise agreement. These pro formas were delivered to Weihing prior to the execution of the franchise agreement, and they clearly show that 2% of gross sales would be paid by the franchisee for advertising *in addition* to royalty expenses. The pro formas shed light on the parties' intentions at the time the franchise agreement was executed, and, therefore, we find they were properly admitted to clarify paragraph 18.

## MEANING OF PARAGRAPH 18

Weihing insists the trial court erred in its construction of paragraph 18, contending paragraph 18 does not empower CFI to compel Weihing to join Ten States. We affirm the trial court's construction.

■ If a contract is unambiguous, interpretation of the contract is a question of law, and on review, we accord the trial court's construction no particular weight, reviewing its action under a correctness standard. *Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985). However, if the contract is ambiguous and the trial court bases its construction on extrinsic evidence of intent, the construction is reviewed as a question of fact and our review is "strictly limited." *Id.*

■ In the present case, paragraph 18 of the franchise agreement, as previously determined, is ambiguous with respect to the rights and duties of the parties. Because

of this ambiguity, parol evidence was properly admitted to explain the parties' intentions and to interpret the language in light of industry custom. The trial court concluded the parties intended, under paragraph 18, to empower CFI to compel its franchisees to participate in and pay for a general advertising program. This construction of paragraph 18 is not only consistent with the language of the provision, but also consistent with competent extrinsic evidence admitted at trial.

## DAMAGES PROPERLY ASSESSED IN FAVOR OF CFI?

■■■ Weihing contends CFI suffered no damages as a result of his refusal to join Ten States. We disagree.

CFI was an intended beneficiary of the three-party trust agreement. The proposed agreement between Weihing and Ten States specifically names CFI as a party, stating:

> THIS AGREEMENT, entered into _____ day of _____, 19___, by and between TEN STATE AREA ADVERTISING ASSOCIATION, INC., a Non–Profit Utah Corporation, hereinafter referred to as "The Corporation[,]" and _____, a Taco Time Franchisee, hereinafter referred to as "Advertiser[,]" and CRAIG FOOD INDUSTRIES, INC. (CFI), as Franchisor.

CFI suffered damages as a result of Weihing's failure to contribute to the advertising trust fund. With fewer funds available for advertising, sales and thus royalties would decline.

Generally, damages for breach of contract should put the person in the position he would have been in had the contract not been breached. *Robert v. Anderson*, 681 P.2d 1326, 1333 (Wyo.1984). In this case, if Weihing had joined the advertising co-op when initially requested by CFI, as he was obligated to do under paragraph 18, Weihing would have had to contribute 2% of his gross sales from that time forward. The trial court concluded CFI initially submitted the advertising program to Weihing in a letter dated March 23, 1983, which granted Weihing 15 days in which to respond. Therefore, the trial court determined Weihing owed fees from March 23 plus 15 days. The fees were calculated from the same books and records used to calculate royalties. This analysis puts CFI in the position it would have been in had Weihing not breached the franchise agreement. Therefore, we affirm this measure of damages.

## UNJUST ENRICHMENT

Weihing's final contention is that the trial court erroneously based its decision on unjust enrichment, a theory CFI did not plead. We reject Weihing's contention. The trial court, in its memorandum decision, *expressly* based its decision on a breach of contract theory, and *merely commented* in its findings that to hold otherwise would have *the effect* of unjust enrichment.

Affirmed. Costs and attorneys fees to CFI. Attorneys fees are to be based upon the parties' franchise agreement.

DAVIDSON and JACKSON, JJ., concur.