**EDWARDS & DANIELS ARCHITECTS, INC., a Utah corporation d/b/a Edwards & Daniels Associates Architects, Plaintiffs, Appellants, and Cross–Appellees,**

v.

**FARMERS' PROPERTIES, INC., a revoked Nevada corporation; Herbert L. Bosch, Jr.; Mary Lou Bosch; Fran Archuleta; Verl Sortor; Jo Ann Sortor; Ron Jenkins; and Sharon Lynn Jenkins; Soter/Knudsen Construction Company, Inc., a Utah corporation; Gregory S. Soter; Sherwin L. Knudsen; Gregory D. Knudsen; and LaMar D. Knudsen d/b/a Soter/Knudsen Development Co., Defendants, Appellees, Cross–Appellants.**

No. 920723–CA.

Court of Appeals of Utah.

Dec. 17, 1993.

R. Stephen Marshall, Salt Lake City, for plaintiffs, appellants.

Ross C. Anderson and John P. Mullen, Salt Lake City, for defendants, appellees.

Before BENCH, JACKSON and ORME, JJ.

## OPINION

BENCH, Judge:

Edwards & Daniels Architects, Inc. (Edwards) appeals the trial court's dismissal of its action against Farmers' Properties, Inc.

(Farmers), Herbert Bosch, Fran Archuleta, Verl Sortor, and Ron Jenkins.[1] We affirm.

## FACTS

In 1984, Farmers and Soter/Knudsen Construction Company, Inc. (Contractor) agreed to become jointly involved in the construction of a hotel and casino in Winnemucca, Nevada. Farmers did not have sufficient funds to build a casino and informed Contractor that if Contractor could finance and build a casino, Farmers would lease the casino from Contractor. Contractor and Farmers agreed to retain Edwards to prepare the designs and plans to be used in the construction of the project. On two occasions in the summer of 1984, Farmers met with Contractor and Edwards to discuss the project. On the second occasion, Farmers viewed preliminary drawings that Edwards had prepared and again approved the hiring of Edwards to prepare the architectural designs and plans. Contractor and Farmers also discussed Edwards's fees and agreed it would be 4.5 percent of the cost of construction, which was estimated to be between $2.6 to $2.9 million.

Farmers sought to discover whether Contractor had the ability to obtain financing to build the casino. Accordingly, they had several discussions with Contractor concerning Contractor's financial worth and its ability to obtain construction financing. Contractor told Fran Archuleta, one of Farmers's principals, that Contractor had a net worth of eight million dollars.

As part of the negotiations, Contractor proposed that Farmers deposit $50,000 in an account, which would be used for preliminary expenses. After Farmers informed Contractor that Farmers would have difficulty raising more than $50,000, Contractor assured Farmers that Contractor would be able to obtain construction financing because of its net worth of eight million dollars. Some of the principals of Farmers had to borrow their share of the $50,000 deposit. Accordingly, Farmers insisted on a $50,000 limit, which was integrated into a lease agreement in September 1984 between Contractor as

---

1. Farmers filed a cross-appeal. However, because we affirm the trial court's ruling on Edwards's appeal, we need not reach the issues raised in Farmers's cross-appeal.

lessor, and Farmers as lessee.[2] The principals of Farmers guaranteed its performance under the lease agreement.

In December 1984, Contractor contacted Farmers and requested that Farmers pay $20,000 to Edwards. Farmers paid the $20,000 by a check drawn on the account that initially contained the $50,000 deposit. Verl Sortor, a principal of Farmers, told Contractor that this payment completely depleted the $50,000 deposit. Accordingly, Contractor told Sortor not to worry about any further architectural fees because those fees would be paid out of the construction loan and they would not be the responsibility of Farmers. Contractor also told Sortor "not to have any contact with the architects whatsoever" because Contractor would take care of any changes or negotiations with Edwards. Contractor informed Edwards that the majority of Edwards's fees would not be paid until construction actually commenced.

Eventually, Contractor failed to obtain construction financing and gave written notice to Farmers that it had not been able to obtain the financing. In December 1985, Contractor demanded that Farmers pay all preliminary expenses, including architectural fees. Farmers did not pay the remaining preliminary expenses.

Thereafter, Edwards brought an action against Contractor for its unpaid architectural fees and also against Farmers based upon a third-party beneficiary claim. Farmers cross-claimed against Contractor for deliberate misrepresentations concerning Contractor's financial worth and the availability of construction financing.

Edwards obtained a judgment against Contractor.[3] However, the trial court dismissed Edwards's third-party claim against Farmers based on the lease agreement between Contractor and Farmers. The court determined that section 8 of the lease was a "condition precedent to further liability of [Farmers] and its personal guarantors beyond the initial deposit, and as such it requires that [Contractor] engage in 'advance, meaningful consultations' with [Farmers], before incurring preliminary expenses beyond the initial deposit of $50,000." The trial court also determined that the condition precedent of "advance, meaningful consultations" was not satisfied, thereby breaching the lease agreement. Thus, the trial court determined that the principals of Farmers were not liable for payment of preliminary expenses beyond the initial $50,000 deposit. Further, the trial court rejected claims that the meetings between Edwards, Contractor,

**2.** Section 8 of the lease agreement provides:

It is understood and agreed by the parties hereto that prior to commitment for financing and commencement of the Construction Work preliminary expenses including, but not limited to, financing, architectural, engineering, legal, and appraisal fees will be incurred in connection with the financing of the construction of the improvements to the Lease Premises. In order to pay the preliminary expenses for the improvement of the Leased Premises in a timely fashion, [Farmers] shall concurrently with the execution of this Lease deposit with [Contractor] the amount of $50,000, said sum to be deposited in a joint account of [Contractor] and [Farmers]. The funds deposited by [Farmers] hereunder shall be used exclusively for said preliminary expenses as described hereunder. In addition, [Farmers] shall deposit in said joint account additional sums needed to pay preliminary expenses on the project from time to time as may be requested by [Contractor]; provided, however, [Contractor] shall consult with [Farmers] in connection with incurring expenses in excess of the deposit made hereunder.

In the event [Contractor] fails to obtain a commitment for financing as described in Section 6 of this Lease, [Contractor] shall be under no obligation to return or repay that portion of the deposit ...; provided, however, that portion of said deposit not so expended shall be returned to [Farmers]. In addition, in the event the amount of the preliminary expenses exceeds the amount deposited hereunder and [Contractor] fails to obtain a commitment for said financing, [Farmers] shall pay said additional preliminary expenses at the time [Contractor] gives written notice to [Farmers] that said financing is not obtainable.

Any reimbursement from the Construction Loan for said preliminary expenses paid from said deposit or reimbursement for any other preliminary expenses paid by [Contractor] or [Farmers] shall be paid to [Farmers] at the time of said disbursement.

**3.** Contractor was dissolved as a corporation at the time of the trial and its principals were dismissed upon stipulation of the parties.

and Farmers in the summer of 1984 satisfied the consultation requirement in section 8 of the September 1984 lease. Finally, the trial court rejected the cross-claim of Farmers against Contractor on the basis of insufficient evidence.

## ISSUES

Edwards raises two issues on appeal related to the lease agreement: (1) whether the trial court erred in finding that Contractor failed to provide advance, meaningful consultations with Farmers regarding architectural fees as required by section 8; and (2) whether the trial court erred in determining that the consultation requirement in section 8 was a condition precedent to Farmers's liability beyond $50,000.

## STANDARD OF REVIEW

■ Edwards challenges the trial court's factual findings. To successfully challenge a factual finding, Edwards must (1) marshal all of the evidence that supports the finding, and (2) demonstrate that, despite the evidence, the finding is so lacking in support as to be "against the clear weight of evidence" and thus, clearly erroneous. *Doelle v. Bradley,* 784 P.2d 1176, 1178 (Utah 1989).

■ Edwards also challenges the trial court's determination that the failure to satisfy the condition precedent of advance, meaningful consultations constituted a breach of the lease agreement. If a contract is unambiguous, interpretation of the contract is a question of law, which we review for correctness. *Craig Food Indus., Inc. v. Weihing,* 746 P.2d 279, 283 (Utah App.1987) (citing *Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985)). If, however, a contract is ambiguous and the trial court bases its construction on extrinsic evidence of intent, we review the trial court's construction as a question of fact, using a clearly erroneous standard. *Id.*

## ANALYSIS

### Meaningful Consultations

■ At the outset, we note that the lease agreement provides that Nevada law governs its enforcement, validity, and performance. However, we see no significant difference between the law of Nevada and our own in regard to interpreting the lease agreement. Under these circumstances, this court may "properly apply Utah law in the absence of an affirmative showing that the law of [Nevada] is different." *Morris v. Sykes,* 624 P.2d 681, 684 (Utah 1981).

■ Edwards challenges the trial court's findings that advance, meaningful consultations did not take place as contemplated by the lease agreement. Edwards marshaled evidence in support of this finding, and then claimed that the consultation requirement was satisfied by Farmers's knowledge of the construction costs. We disagree.

The trial court found that Farmers "did not know, nor [was it] consulted, ... regarding what the cost of [the architectural fees] would be." The trial court also found, however, that Farmers discussed the architectural fees with Contractor and Edwards. "It was agreed that [Edwards] would charge a fee equal to 4.5 percent of the estimated cost of construction, which the parties discussed as being between $2.6 and $2.9 million." While the trial court's findings may be inconsistent regarding Farmers's knowledge of the cost of the architectural services, such inconsistency is immaterial because the lease agreement clearly requires consultations. Mere knowledge of the architectural fees does not extinguish the consultation requirement of the lease.

The consultation requirement of section 8 of the lease was not satisfied. Section 8 provides, in pertinent part: "[Farmers] shall deposit ... additional sums needed to pay preliminary expenses on the project from time to time as may be requested by [Contractor]; provided, however, [Contractor] shall *consult* with [Farmers] in connection with incurring expenses in excess of the deposit made hereunder." (Emphasis added.)

Edwards claims that the meetings in the summer of 1984 between Farmers and Contractor satisfy the consultation requirement.

However, these meetings occurred prior to the lease being signed in September 1984. Because section 8 of the lease anticipates prospective consultations, we cannot say, as a matter of law, that the prelease consultations satisfy the consultation requirement. Further, the consultation requirement was not met by any event that occurred after the lease was signed. Therefore, the trial court's findings regarding section 8 are not clearly erroneous.

### Condition Precedent

■ Edwards also challenges the trial court's determination that the consultation requirement was a condition precedent to Farmers's liability beyond the initial $50,000 deposit. The first paragraph of section 8 provides that Farmers may be required to deposit additional sums for preliminary expenses *"provided, however, [Contractor] shall consult with [Farmers] in connection with incurring expenses in excess of the deposit made hereunder."* (Emphasis added.) Thus, this paragraph requires that Contractor consult with Farmers before Farmers will be responsible to deposit sums beyond the initial $50,000 deposit.

■ Edwards, however, claims that it is suing under the second paragraph of section 8, not the first paragraph. The second paragraph states:

> [I]n the event the amount of the preliminary expenses exceeds the amount deposited hereunder and [Contractor] fails to obtain a commitment for said financing, [Farmers] shall pay said additional preliminary expenses at the time [Contractor] gives written notice to lessee that said financing is not obtainable.

Edwards concedes that section 8 of the lease is ambiguous. When a contract is ambiguous

with respect to the parties' rights and duties under the contract, a trial court may consider extrinsic evidence to determine such rights and duties. *Weihing*, 746 P.2d at 282. The trial court admitted extrinsic evidence regarding the parties' intent in section 8. Edwards did not appeal this ruling, and therefore, we treat the section as ambiguous and review the court's determination as a question of fact. *See id.* at 283.[4]

The trial court determined that the first paragraph of section 8 clearly required that Farmers be consulted before incurring additional liability. Further, the court determined that the second paragraph was premised upon Farmers being consulted, and thus, Farmers became liable for preliminary expenses beyond $50,000 only after consultations had occurred. Since consultations did not occur as contemplated by the lease agreement, the trial court determined that Farmers could not be held liable beyond $50,000.

■ The trial court did not clearly err in determining, from the extrinsic evidence, that Farmers would have to be consulted before it incurred liability beyond $50,000.[5] The testimony of Farmers's principals and Contractor's attorney, who drafted the lease agreement, support the trial court's determination that Farmers had to be consulted before it would be liable beyond the initial $50,000 deposit. Given this extrinsic evidence, we cannot say the trial court clearly erred in its finding and therefore we affirm the trial court's determination that the consultation requirement was not satisfied.

### CONCLUSION

The trial court's finding that Contractor had not provided "advance, meaningful con-

---

4. We proceed in this fashion in view of the procedural posture in which this issue comes to us, not because we necessarily agree that section 8 is ambiguous.

5. If the extrinsic evidence was insufficient to determine the intent of the parties, we would resort to the rule of construction that we construe an ambiguous contract against the drafter,

which in this case is Contractor. *Krauss v. Utah State Dep't of Transp.*, 852 P.2d 1014, 1019 (Utah App.1993). Further, any ambiguity in a lease shall be construed against the lessor, which in this case is also Contractor. *See Stevensen v. Bird*, 636 P.2d 1029, 1031 (Utah 1981) (quoting *Powerine Co. v. Russell's Inc.*, 103 Utah 441, 455, 135 P.2d 906, 913 (1943)).

sultations" was not clearly erroneous. Further, the trial court did not err in determining that such consultations were a condition precedent to further liability of Farmers and its principals beyond the initial $50,000 deposit.

We therefore affirm the trial court's ruling.

JACKSON and ORME, JJ., concur.