Argued and submitted September 5, affirmed November 24, 1980

## BANK OF WALLOWA COUNTY,
*Respondent,*

*v.*

## GARY MAC, INC. et al,
*Defendants,*

## HAMMACK'S, INC.,
*Appellant.*

(No. 8241, CA 16315)

619 P2d 1310

William R. Kirby, Enterprise, argued the cause and filed the brief for appellant.

Alex M. Byler, Pendleton, argued the cause for respondent. With him on the brief was Corey, Byler & Rew, Pendleton.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

## BUTTLER, J.

Plaintiff, the Bank of Wallowa County (Bank), brought this suit to foreclose a security interest it claimed in certain shop and office equipment alleged to have been given the Bank by defendant Gary Mac, Inc. (Gary Mac); the Bank prayed that its interest be determined to be superior to any rights claimed by defendant Hammack's, Inc. (Hammack's) in and to that equipment, all of which was in the possession of Hammack's at the time suit was filed. From a decree recognizing the bank's security interest in that personal property, and holding that interest superior to Hammack's claim, and foreclosing it, Hammack's appeals. We affirm.

Hammack's owned and operated a farm implement and truck business in Enterprise, and was the franchised dealer for certain nationally recognized farm equipment manufacturers. In the fall of 1977 Gary Mac entered into negotiations with Hammack's for the purchase of that business. On December 1 of that year, prior to executing an agreement, Gary Mac went into possession of Hammack's business premises, assumed possession of the inventory and shop and office equipment, and began operating the business. Later that month the parties signed a "Purchase and Sale Receipt," the effect of which is disputed and will be discussed below.

In order to finance the purchase and operation of the business Gary Mac applied for, and was granted, a loan from the bank, which advanced approximately $67,000 to Gary Mac over a period from late 1977 until the middle of 1978, including $28,000 of the $30,000 down payment. Each advance was evidenced by a promissory note, and all of the notes were consolidated into one note for the aggregate amount on August 31, 1978. To secure that consolidated note, Gary Mac executed on that date a security agreement and financing statement covering the shop and office equipment as collateral, but the security interest was not then perfected by filing. ORS 79.3020.

In late 1978 Gary Mac encountered financial difficulties, as a result of which it missed its December and January rent payments to Hammack's. Gary Mac was also unable to meet a required December 1st payment under the

contract for the purchased inventory and office and shop equipment. During December and January Hammack's made demands for the payments then owing under the contract. On February 5, 1979, after being advised by the bank that it would loan no more money to Gary Mac, Hammack's locked Gary Mac out of the business premises and took possession of the inventory and shop and office equipment. Immediately thereafter, on February 6, 1979, the bank filed the financing statement it had obtained pursuant to the security agreement, executed earlier, and which covered the shop and office equipment.

On these facts, the bank had a perfected security interest in the shop and office equipment prior to any interest of Hammack's unless: (1) no property interest in that equipment had passed to Gary Mac permitting Gary Mac to grant a security interest to the bank, or (2) Hammack's had a possessory security interest which it perfected prior to the bank's perfecting its security interest by filing the financing statement admittedly after Hammack's reduced the equipment to its possession.

## GARY MAC'S INTEREST

The agreement between Hammack's and Gary Mac was entitled "Purchase and Sale Receipt." In summary, the agreement provided that Hammack's sold the inventory to Gary Mac for the sum of $47,168.47, payable $30,000 down, with the balance payable in four installments of 10 percent of the balance, plus interest, on December 1, 1978, through December 1, 1981, with a balloon payment due on December 1, 1982. The agreement also provided for a written lease to be executed whereby Hammack's was to lease to Gary Mac the business premises for a term of five years at a rental of $1,200 per month.

With respect to the shop and office equipment, the subject of this appeal, the agreement contained the following provisions:

"7. It is understood and agreed that simultaneous with this transaction *Seller agrees to sell to GARY McFET-RIDGE and GAYLE McFETRIDGE, sole stockholders of Purchaser herein, all shop and office equipment used in connection with Seller's business,* including but not limited to the following:

"Base CB Radio
Auto Vacuum Cleaner
5 Benches
Calcium Pump
60 Ton Press
2 Battery Chargers
Snap on Scope
Time Clock etc.
Special tools in tool
  room
Air Compressor
Grinders
2 Welders
Dynometer

Sound System
Steam Cleaner
2 Drill Presses
Valve Grinder & Tools
Parts Washer Solvent
Tire & Grease Equipment
2 Actline Welders
IBM Selectric II Typewriter
  (new)
File Cabinets
Adding Machines
2 older Typewriters
5 Desks
Copy Machine (new)

"That the sales price for such shop and office equipment is the sum of SIXTY THOUSAND and no/100 ($60,000.00) DOLLARS and will be evidenced by Promissory Note from McFetridges to Seller herein, payable at the rate of ten (10%) percent of the sales price per year, plus interest at the rate of eight (8%) percent per annum on the unpaid balance and shall be paid annually commencing on December 1, 1978, and a like payment on the 1st. day of December of each year thereafter until December 1, 1982, at which time the full balance shall be due and payable. *It is understood that McFetridges will transfer such shop and office equipment to the Purchaser under this contract for corporate stock. If Seller herein desires security from McFetridges, such security shall be by pledge of corporate stock.*" (Emphasis added.)

■    Hammack's contends that there was no enforceable agreement to sell, and no sale, of the shop and office equipment to the McFetridges because there is no writing satisfying the statute of frauds. ORS 72.2010(1).[1] It argues that because the agreement was signed by the McFetridges

---

[1] ORS 72.2010(1) provides:

"Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this subsection beyond the quantity of goods shown in such writing."

on behalf of Gary Mac, the corporation, and not as individuals, it was not signed by the party against whom enforcement is sought, as required by the statute. However, in the context of this dispute it is Hammack's against whom enforcement is sought, and it signed the agreement. Furthermore, it is clear that possession of the shop and office equipment was delivered to the McFetridges on December 1, 1977, that they transferred their interest in the equipment to the corporation (Gary Mac) on January 10, 1978, in exchange for corporate stock and that Hammack's looked to Gary Mac for the December 1, 1978, payment on that equipment. Under those facts, it appears that Hammack's treated the transfer and sale as an accomplished fact, thereby taking the transaction out of the statute of frauds. ORS 72.2010 (3) provides:

"A contract which does not satisfy the requirements of subsection (1) of this section but which is valid in other respects is enforceable:

"* * * * *

"(c) With respect to goods for which payment has been made and accepted or which have been received and accepted in accordance with ORS 72.6060."

We conclude that the statute of frauds would not be a bar to the McFetridges' enforcement of the agreement against Hammack's.

■ Hammack's contends further that even if the statute of frauds is not a bar, neither the McFetridges nor Gary Mac acquired any interest in the shop and office equipment because the entire agreement between the parties was executory, subject to the condition precedent that Gary Mac obtain the transfer of all of the franchises then held by Hammack's. There is a provision in the agreement which might be construed as Hammack's contends, but even if we assume that it should be so construed, the record here indicates that prior to Hammack's taking possession of the shop and office equipment, the last of the franchises was transferred to Gary Mac. Accordingly, if there was a condition precedent it was fulfilled.

The record also supports the conclusion that Hammack's did not treat the provision in the agreement as a condition precedent. GMC was the last of the franchisors to

agree to transfer Hammack's franchise to Gary Mac, and it did not do so until early 1979, about 14 months after execution of the agreement. The agreement did not specify a time limit within which the franchises had to be transferred, so it may be implied that the transfers were required to be accomplished within a reasonable time. Notwithstanding the extended delay in the transfer of the GMC franchise, there is nothing in the record to suggest that Hammack's attempted to rescind the sale and repossess the equipment on the ground that more than a reasonable time had expired. Not only did it not do so, it looked to Gary Mac for two payments due under the agreement; it also wrote to GMC, in response to an inquiry from that company, on January 8, 1979, advising GMC that the franchise could be transferred to Gary Mac as soon as the past due rent and payments due under the sales agreement were made. In other words, payment was attempted to be made a condition precedent to the transfer of the franchises. On January 22, 1979, GMC approved transfer of the franchise to Gary Mac even though Hammack's had not been paid. Shortly thereafter, at the request of Hammack's, GMC "rescinded" the transfer of the franchise to Gary Mac, and on February 5, 1979, Hammack's attempted to repossess the shop and office equipment.

Hammack's final contention on this point is that the agreement regarding the shop and office equipment was separate and divisible from the sale of the inventory, and that this separate and divisible contract fails for lack of consideration. The history of the transaction belies that contention, but assuming the contract is divisible it is supported by consideration. Hammack's argues that the only payment made under the agreement was on the inventory, and because no payment was made on the shop and office equipment, there was no consideration. It is not necessary, however, for a promisee to make a payment in order for there to be consideration; the return promise to pay was sufficient consideration to form the contract. *Kornbrodt v. Equitable Trust Co.,* 137 Or 386, 392, 2 P2d 236, 3 P2d 127 (1931).

We conclude, therefore, that Gary Mac had a sufficient interest in the shop and office equipment to grant a

security interest to the bank, which it did on August 31, 1978. The question remains, whether Hammack's acquired a possessory security interest on February 5, 1979 having priority over the bank's security interest which was not perfected until the next day, February 6, 1979.

## HAMMACK'S INTEREST

■ Hammack's contends that it retained title to the shop and office equipment, as a result of which it had an unperfected security interest under ORS 71.2010(37) which it perfected by reducing the property to its possession. ORS 79.3050.[2] The section referred to (ORS 71.2010(37), on which Hammack's relies, is nothing more than a definition. However, recognition of security interests arising from the retention of title appears in ORS chapter 72, section 72.4010(1) of which provides:

"Each provision of ORS 72.1010 to 72.7250 with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. In so far as situations are not covered by the other provisions of ORS 72.1010 to 72.7250 and matters concerning title become material the following rules apply:

"(1) Title to goods cannot pass under a contract for sale prior to their identification to the contract as provided in ORS 72.5010, and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by the Uniform Commercial Code. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of ORS 79.1010 to 79.5070 on secured transactions, title to goods passes from the seller to

_____

[2] ORS 79.3050 provides:

"A security interest in letters of credit and advices of credit, goods, instruments, money, negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest. A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in ORS 79.1010 to 79.5070. The security interest may be otherwise perfected as provided in ORS 79.1010 to 79.5070 before or after the period of possession by the secured party."

the buyer in any manner and on any conditions explicitly agreed on by the parties."

It would appear, therefore, that if it were intended that the seller retain title, the buyer acquired a "special property" in the goods by their identification and the absence of an explicit agreement to the contrary. Furthermore, security interests which arise under chapter 72 are limited by ORS 79.1130:

"A security interest arising solely under ORS 72.1010 to 72.7250 on sales is subject to the provisions of ORS 79.1010 to 79.5070 except that to the extent that and so long as the debtor does not have or does not lawfully obtain possession of the goods:

"(1) No security agreement is necessary to make the security interest enforceable; and

"(2) No filing is required to perfect the security interest; and

"(3) The rights of the secured party on default by the debtor are governed by ORS 72.1010 to 72.7250 on sales."

In other words, once the buyer receives lawful possession of the goods, any security interest which might have arisen under ORS 72.4010(1) by the retention of title no longer exists and the creditor must thereafter comply with ORS chapter 79 to acquire and perfect a security interest. *Stumbo v. Hult Lumber Co.,* 251 Or 20, 36, n 11, 444 P2d 564 (1968). Assuming Hammack's intended to reserve title to the shop and office equipment, its security interest under chapter 72, if any, dissipated when the McFetridges took lawful possession of the collateral, and could not be revived and perfected by the single act of retaking possession.

Neither did Hammack's have a security interest under chapter 79 ORS. ORS 79.1020(1)(a) provides:

"(1) Except as otherwise provided in ORS 79.1040 on excluded transactions, ORS 79.1010 to 79.5070 apply:

"(a) To any transaction (regardless of its form) which is *intended* to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts; * * *." (Emphasis added.)

That section is complimented by ORS 79.2030(1) dealing with enforceable security interests, which provides:

"(1)   Subject to the provisions of ORS 74.2080 on the security interest of a collecting bank and ORS 79.1130 on a security interest arising under ORS 72.1010 to 71.7250, *a security interest is not enforceable* against the debtor or third parties with respect to the collateral and does not attach   *unless:*

"(a)   The collateral is in the possession of the secured party *pursuant to agreement,* or the debtor has signed a security agreement which contains a description of the collateral * * *; *and*

"(b)   Value has been given; and

"(c)   The debtor has rights in the collateral." (Emphasis added.)

■        It appears, therefore, that not only must the parties intend that the security interest arise, but that intention must be manifested by the debtor's signing a writing containing a description of the collateral, or giving possession of the collateral to the secured party "pursuant to agreement." Hammack's appears to concede that it did not intend to retain a security interest in the office and shop equipment, and we think the agreement makes it clear that no such intention existed. The agreement expressly set forth the understanding that the McFetridges would transfer the shop and office equipment to Gary Mac in exchange for corporate stock, and that if Hammack's desired security, such security would be in the form of a pledge of the corporate stock. The most that can be said is that neither the McFetridges nor Gary Mac attempted to prevent Hammack's from locking them out of the premises, and Hammack's does not claim any landlord's lien (ORS 87.162). Accordingly, we conclude that Hammack's did not have a security interest to perfect by taking possession of the property.

### THE BANK'S INTEREST

■        Finally, Hammack's contends that there was no intention that the bank have a security interest. It is clear from the record, however, that the first draft of the "Purchase and Sale Receipt" provided that Gary Mac would buy both the inventory and shop and office equipment and that Hammack's would have a security interest in all of that property; however, it was necessary for Gary Mac to borrow from the bank most of the down payment as well as operating capital, and the bank wanted security for the loans.

Accordingly, the agreement was revised to provide that Gary Mac would buy the inventory and give Hammack's a security interest in that property and that the McFetridges would buy the shop and office equipment, transfer it to Gary Mac in exchange for corporate stock which would be pledged to Hammack's if it desired that security.

It is also clear that Gary Mac executed a security agreement with the bank on August 30, 1978, expressly giving the bank a security interest; apparently, a financing statement was executed at the same time, although the security interest was not perfected until February 6, 1979, when the financing statement was filed. We concede that the delay in obtaining the security agreement and in filing the financing statement is perplexing; however, we harbor no doubt that it was intended that the bank obtain a security interest, or that, notwithstanding the delay, the bank complied with the statutory requirements for perfecting its security interest.

Accordingly, we conclude that Hammack's did not have a perfected security interest, but the bank did; we affirm the decree foreclosing the bank's security interest in the office and shop equipment.

Affirmed.