David L. NIELSEN and Garwood H. Walton, Plaintiffs and Respondents,

v.

MFT LEASING, et al., Defendants and Appellants.

No. 17522.

Supreme Court of Utah.

Nov. 9, 1982.

Robert S. Howell, Michael Z. Hayes, Salt Lake City, for defendants and appellants.

W. Scott Barrett, Logan, for plaintiffs and respondents.

STEWART, Justice:

In this action plaintiffs David Nielsen and Garwood Walton sued MFT Leasing Company (MFT) to rescind a lease of computer equipment for failure of consideration. Nielsen and Walton also sued Dr. Marvin Pursinger and Pursinger Company, Inc. for damages based on fraud in inducing plaintiffs to enter into the lease agreement. Defendants Pursinger and Pursinger Company did not answer the complaint, and a default judgment was entered against them. They are not parties to this appeal. MFT, the defendant below and the appellant here, counterclaimed against Nielsen and Walton, seeking a money judgment for the lease payments which MFT claimed were accelerated because of Nielsen and Walton's breach of the lease. The trial court granted a decree of rescission of the lease based on MFT's failure to provide the computer equipment called for in the lease. From that decree, MFT appeals.

Pursinger initiated an enterprise whereby Nielsen and Walton would lease Pursinger's computers from an independent leasing company, and Pursinger and his company in turn would sublease the same equipment from Nielsen and Walton. In exchange for the use of Nielsen's and Walton's credit rating to procure the lease, Nielsen and Walton were to receive the investment tax credit together with interest free loans in the amount of $30,000 each from Pursinger during the period of the leases.

In December, 1978, Pursinger supplied computer units to Nielsen and Walton. In January, 1979, Mr. Barr of MFT traveled to California to discuss the leasing program with Pursinger and his attorney. At that time Barr was aware of Pursinger's credit problems. On January 15, Barr met with Nielsen and Walton. The lease agreements between Nielsen and Walton and MFT were signed at that time, and Nielsen and Walton acknowledged delivery from Pursinger. The acknowledgment stated that the lease equipment had been delivered to Nielsen and Walton and that Nielsen and Walton had examined the equipment invoice and requested MFT to pay the amount of the invoice to the supplier Pursinger Company.

However, the equipment identified by serial number in the lease agreement was not the same as the equipment delivered. On January 24 MFT paid Pursinger Company for the computer equipment, retaining first month payments and security deposits. Before making payment to Pursinger on that date, MFT had received a Dunn & Bradstreet report on Pursinger and was aware of numerous law suits brought by other leasing and computer companies against Pursinger and his company for large sums of money.

In February, before any lease payment was due MFT, MFT learned of a criminal action against Pursinger in California in which he had been convicted and was awaiting the outcome of an appeal. On April 1, 1979, Nielsen received notice from Data Point Corporation asserting that it owned all the equipment which Nielsen and Walton had leased from Pursinger. Data Point demanded delivery of the equipment from Nielsen. On April 11 Nielsen sent a letter of rescission to MFT asserting a fail-

ure of consideration. On April 16, 1979, MFT sent a demand letter to Nielsen and Walton giving them ten days to make payment. Two days later Data Point, alleging it was the owner of the equipment, obtained a temporary restraining order against Nielsen and Walton. The restraining order was accompanied by an undertaking of $410,000 and a writ of replevin for the equipment. Thereafter, the sheriff of Cache County took possession of the computer equipment from Nielsen and Walton. MFT intervened in the Data Point action and, pursuant to a settlement in November of 1979, received delivery of six boxes of computer equipment.

In the instant action, Nielsen and Walton sued MFT for rescission of the lease agreement on the ground that MFT did not provide the equipment identified in the leases. The trial court found that the equipment delivered was incomplete and did not have the same serial numbers as those listed in the leases. The trial court concluded that there was failure of consideration and entered judgment for Nielsen and Walton.

On this appeal MFT does not argue the inapplicability of the doctrine of failure of consideration as such, but does argue there was no failure of consideration in fact. In this regard, MFT contends that the trial court erroneously allowed Nielsen and Walton to adduce parol evidence to contradict and modify the terms of the written lease.

■ Evidence of failure of consideration does not vary or alter the terms of a contract; it attacks the very existence of the contract for the purpose of proving it unenforceable. *Nielsen v. Richter,* 20 Cal. App.2d 546, 67 P.2d 353 (1937). Such evidence does not contravene the parol evidence rule. *Berta v. Rocchio,* 149 Colo. 325, 369 P.2d 51 (1962). *Lennen & Newell, Inc. v. Clark Enterprises, Inc.,* 51 Hawaii 233, 456 P.2d 231 (1969); *Casentini v. Nevada National Bank,* 88 Nev. 456, 499 P.2d 652 (1972). The evidence adduced in the instant case was admitted not to alter or vary the terms of the written lease agreement, but to prove that the equipment delivered was not the same equipment that was the subject of the lease.

Having proved that the equipment delivered was not the equipment specified in the lease, Nielsen's and Walton's acknowledgment of delivery does not necessarily defeat their claim of lack of consideration, at least where MFT knew, or had ample opportunity to determine, that the goods which were the subject matter of the lease had not been delivered. Under such circumstances, a written recital that consideration has been received may be contradicted. *FMA Financial Corp. v. Hansen Dairy, Inc.,* Utah, 617 P.2d 327 (1980); *see Bobo v. Bigbee,* Okl., 548 P.2d 224 (1976).

■ MFT contends that the trial court erred in not denying relief on the equitable doctrine of unclean hands. MFT relies on Nielsen's and Walton's arrangement with Pursinger, their acknowledgment of delivery, and their possession of the computer equipment prior to entering into the lease. These facts must be viewed against MFT's own conduct in the matter. MFT clearly had the means and the opportunity by which, with reasonable diligence, it could have acquired the knowledge that the goods delivered were not the bargained for equipment. The "acknowledgment" which Nielsen and Walton signed was simply a provision which appeared in the form lease agreement MFT prepared and submitted to them. Significantly, the lease stated the equipment was leased "upon the following terms and conditions: ... Systems installation: Site Inspection, Staging and Installation, System Integration of all Hardware and Software ... Function and Operation, Testing for System Performance ... Hardwiring as necessary ...." The agreement containing this information was prepared by MFT and its contents were known to Mr. Barr, the representative of MFT who visited Nielsen's premises for purposes of signing the lease. Yet Barr testified, and the court below found, that Barr, in spite of his knowledge of the terms of the lease, made no attempt whatsoever to even look at the equipment. Moreover, Barr testified that he made payment to Pursinger for the computer equipment on January 24 because

"the requirements were satisfied and we had no further reason to withhold payment, and [Pursinger's] representative was there wishing to be paid." Barr neither asked Pursinger if he owned the equipment nor whether the equipment that had been delivered to Nielsen and Walton was the same as the equipment listed on the leases.

The facts here are not unlike those in *FMA Financial Corp. v. Hansen Dairy, Inc.,* 617 P.2d 327 (1980), where this Court recently held that a lessee was not estopped to claim failure of consideration even though it had signed a document signifying acceptance. In that case the lessor "knew, or should have known, that . . . the building (as a working silo at [lessee's] premises) was not in existence." *Id.* at 331. The Court noted "that a party claiming an estoppel, 'if at the time he acted had knowledge of the truth or had means by which with reasonable diligence he could acquire the knowledge,' cannot claim to have been misled by relying upon the representations of another." *Id.* (quoting *Coombs v. Ouzounian,* 24 Utah 2d 39, 42, 465 P.2d 356, 358 (1970)).

MFT contends that the trial judge based the rescission on MFT's knowledge of Pursinger's financial problems and his underlying agreement with Nielsen and Walton. MFT argues that even if it knew or should have known of the financial condition of Pursinger Company or its prior agreements with Nielsen and Walton, that knowledge does not constitute legal grounds for rescission of the lease. That, of course, is true. However, the trial court did not base its ruling on MFT's knowledge of Pursinger's financial condition and prior arrangements with Nielsen and Walton. The findings of fact and conclusions of law clearly show that the trial court based its decision on the fact that MFT did not provide the equipment specified in the lease contract. However, in balancing the equities, it was not inappropriate for the court to state additionally in its Memorandum Decision that MFT "knew, or should have known of Pursinger's financial condition and hence knew they were in jeopardy of furnishing machinery to the plaintiffs that someone else would have a claim on and in fact repos-

sessed and took from the plaintiff." MFT's awareness of the likelihood that Pursinger would not be able to provide MFT with the equipment described in the lease, and therefore the likely inability of MFT to provide plaintiffs with consideration for the lease, was relevant in light of plaintiffs' actual failure to provide the described equipment.

Finally MFT contends that the trial court erred in stating that MFT did not have good and marketable title to the computer units. The trial judge stated in his Memorandum Decision of December 12, 1980, that MFT could not deliver clear title under the lease arrangement to Nielsen and Walton, but neither the findings of fact and conclusions of law, the Memorandum Decision of January 20, 1981, amending the findings of fact, nor the amended Judgment of January 26, 1981, make any reference to the title of the property. The trial court did find that Data Point advised Nielsen in April, 1979, that it owned all the leased equipment consisting of eleven computer units and twenty-two boxes in Nielsen's building and that on May 30, 1979, pursuant to court process, the sheriff of Cache County picked up the equipment for Data Point and removed it from Nielsen's premises. Thereafter, MFT intervened in the Data Point case and by way of settlement in November of 1979 obtained redelivery of only six boxes containing three computer units.

Clearly, the trial court did not consider that Data Point's claim of superior title to the equipment was dispositive. Rather, its decision rested on the fact that MFT did not provide Nielsen and Walton with the equipment which was the subject of the lease agreement. The court focused on the fact that MFT did not regain possession for six months and that, even after regaining possession, did not advise Nielsen and Walton where the computer units were or make any effort to sell, lease or redeliver the equipment to them. These findings clearly support the trial court's conclusion of law that the plaintiffs were entitled to rescind the lease for failure of consideration.

Affirmed. Costs to respondents.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.