COPPER STATE LEASING COMPANY,
a Utah corporation, Plaintiff
and Appellant,

v.

BLACKER APPLIANCE & FURNITURE
COMPANY, an Idaho corporation;
Kyle Blacker, James Blacker, and T.C.
Blacker, individually; Blacker Furniture Company, a Utah corporation;
and Gary Blacker, Fred Blacker, and
Rick Blacker, individually, Defendants,
Appellees, and Third–Party Plaintiffs,

v.

John GRAY and Edward Graven,
Third–Party Defendants.

No. 20785.

Supreme Court of Utah.

Aug. 31, 1988.

Rehearing Denied Oct. 20, 1988.

Jeffrey M. Jones, Michael L. Dowdle, Salt Lake City, for plaintiff and appellant.

Gaylen S. Young, Jr., Salt Lake City, for defendants, appellees and third-party plaintiffs.

GREENWOOD, Court of Appeals Judge:

Plaintiff Copper State Leasing Company ("Copper State") appeals from a summary judgment granted defendants on the complaint's first cause of action and judgment after trial for defendants on Copper State's second cause of action.

This appeal follows disposition of two cases consolidated by the district court. In each case, Copper State was the plaintiff. The defendants in one case were Blacker Appliance & Furniture Company ("Blacker Appliance"), an Idaho corporation, and Kyle Blacker, James Blacker, and T.C. Blacker ("the Idaho Blackers"). The defendants in the other case were Blacker Furniture Company ("Blacker Furniture"), a Utah corporation, and Gary Blacker, Fred Blacker, and Rick Blacker ("the Utah Blackers").

In 1981, all of the Blacker individuals had discussions with Leslie John Gray ("Gray") and Edward G. Graven ("Graven") about investments in a commodity arbitrage program. The Blackers gave Gray and Graven $300,000 for investment in the program, but the funds were placed, with the

Blackers' approval, in an interim diamond investment. Gray and Graven told the Blackers that all investors in the program were required to own computers and suggested financing their computer purchases through Copper State. Gray and Graven further said that they or their companies would make payments on any loans or leases obtained to purchase the computers.

Gray and Graven procured loan application forms from Copper State. The Blackers filled out the forms and provided corporate tax returns and financial statements for the two Blacker corporations and personal financial statements for the Blacker individuals. Gray and Graven delivered the documents to Copper State and discussed the details of the proposed transactions with representatives of Copper State.

In June 1981, Copper State and Blacker Furniture executed a commercial lease agreement provided by Copper State to lease a computer. The Utah Blackers executed personal guarantee agreements, guaranteeing performances of the lease. In August 1981, Copper State, Blacker Appliance, and the Idaho Blackers executed a similar commercial lease agreement and personal guarantees.

A request was made through Gray and Graven, ostensibly for the Blackers, that Copper State immediately disburse the purchase price for the computers to the computer vendor, Cowboy Computers, which would, in turn, pay the funds to Data General, the computer manufacturer. On June 22, 1981, Gary Blacker, for Blacker Furniture, executed a form entitled "Acceptance of Equipment and Approval for Payment of Invoices" ("Acceptance"), which had the following added language typed in: "Please disburse money to Cowboy Computers prior to delivery. We understand that this will initiate the lease and payments will start July 20, 1981. We take full responsibility for delivery of the equipment." The date of July 20, 1981, was crossed out, substituted with September 25, 1981, and initialed by Gary Blacker.

Similarly, Blacker Appliance executed an Acceptance on August 20, 1981, with the following added language: "Disburse money to Cowboy Computers prior to delivery of computer. We understand that this will initiate the lease and payments which will start one month from date of funding."

Copper State received the two Acceptances and invoices from Cowboy Computer for two computers. Copper State disbursed $84,000 to Cowboy Computers on August 28, 1981, representing $42,000 per computer. Gray and Graven, however, never forwarded the money to Data Computers but invested in diamonds. The money was lost and never recovered. The computers were never delivered to Blacker Furniture or Blacker Appliance, and those companies did not make payments on the leases.

When payments under the two leases were not made, Copper State sued Blacker Furniture, Blacker Appliance, and the Blacker individuals for payments due under the leases and for damages incurred because of defendants' alleged misrepresentations. Claims by both Copper State and defendants against Gray and Graven were ultimately dismissed because they had filed bankruptcy petitions.

On appeal, Copper State claims that the trial court erred in (1) granting defendants summary judgment on Copper State's claims for payments under the leases; and (2) finding for defendants on Copper State's claim for misrepresentation.

## I. SUMMARY JUDGMENT

Copper State avers that disputed issues of material fact precluded the trial court's grant of summary judgment for defendants and that defendants were not entitled to summary judgment as a matter of law. In reviewing a summary judgment, we analyze the facts and inferences in a light most favorable to the losing party. Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Frisbee v. K & K Constr. Co.*, 676 P.2d 387, 389 (Utah 1984). If our review discloses genuine issues of material fact, we will reverse and

remand. *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987).

The undisputed facts indicate that defendants executed the two lease agreements and personal guarantees, agreeing in each to pay Copper State thirty-six monthly payments of $1,574.56 for lease of a computer. They thereafter executed the Acceptances. Copper State paid $84,000 to Cowboy Computers for the purchase of the two computers. The $84,000 was not used to purchase the computers, but Gray and Graven diverted the money into an investment scheme which failed. Defendants never received possession of the computers and did not make payments under the leases. Although factual disputes exist relating to Copper State's claim of misrepresentation, the facts material to interpretation and performance of the leases are not disputed. Thus, because there are no genuine issues of material fact, we now turn to whether defendants were entitled to summary judgment as a matter of law.

In assessing whether summary judgment was appropriate as a matter of law, we must address two issues: (1) the terms of the contracts between the parties; and (2) whether the trial court correctly ruled as a matter of law that the lease agreements were unenforceable due to failure of consideration.

Contract interpretation "may be either a question of law, determined by the words of the agreement, or a question of fact, determined by extrinsic evidence of intent." *Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985). In addition, "[i]f a trial court interprets a contract as a matter of law, we accord its construction no particular weight, reviewing its action under a correctness standard." *Id.* However, if the contract is ambiguous and the trial court makes findings of fact, this Court's review is strictly limited. *Id.*

█ In the present case, we must first determine, as a matter of law, if the typed-in words on the Acceptances modified the parties' contract. If the language of the modified contract is not ambiguous, we can then interpret, as a matter of law, the contract, including defining the considera-

tion therein. Having identified the consideration, the undisputed facts should reveal whether or not there was a failure of consideration.

We first examine whether the typed-in words on the Acceptances modified the lease agreements. If parties agree to a modification of their contract, "the terms [of the modification] govern the rights and obligations of the parties under the contract, and any pre-modification contractual rights which conflict with the terms of the contract as modified must be deemed waived or excused." *Rapp v. Mountain States Tel. & Tel. Co.*, 606 P.2d 1189, 1191 (Utah 1980). Further, "[b]reach of the contract, to the extent that it occurred at all, may not now be assigned to acts or omissions excused by such modifications." *Id.* at 1192. If a printed form is modified by inserted words in writing or otherwise, the inserted words "take precedence over the printed matter." *Bank of Ephraim v. Davis*, 559 P.2d 538, 540 (Utah 1977).

The leases in this case provided that Copper State would purchase the computer equipment from the supplier and that the lessees, Blacker Furniture and Blacker Appliance, would arrange for delivery of the equipment. Paragraph 8 of the leases states, "Upon the execution of this lease *and the delivery of an item of Equipment*, Lessee shall be obligated to perform in accordance with the terms hereof, including the payment of rent prescribed herein" (emphasis added). Therefore, under the lease agreements alone, payment by Blacker Furniture and Blacker Appliance was contingent upon delivery of the computer equipment. In addition, the pristine version of the Acceptances stated that the equipment had been received and was acceptable and requested that the lessor pay the supplier. The Acceptances further stated that the form must be signed before the supplier would be paid.

However, both Acceptances contained typed-in changes. Blacker Furniture's Acceptance stated: "Please disburse money to Cowboy Computers prior to delivery. We understand that this will initiate the lease and payments will start [September

25, 1981]. We take full responsibility for delivery of the equipment." Blacker Appliance's Acceptance stated: "Disburse money to Cowboy Computers prior to delivery of computer. We understand that this will initiate the lease and payments which will start one month from date of funding."

Defendants caused the additional language to be typed onto the Acceptances and signed the altered Acceptances. The printed Acceptance and lease agreement provided that once the computer equipment was delivered and acceptable, payment was due. In comparison, under the altered contract, Copper State agreed to pay the supplier of the leased computer equipment prior to delivery, in contrast with the usual agreement not to pay until after delivery and acceptance. In turn, the Blackers agreed to commence payments under the lease on September 25, 1981, and one month after funding, respectively. Also, Blacker Furniture explicitly assumed responsibility for delivery of the equipment. We, therefore, hold as a matter of law that the typed-in provisions on the Acceptances take precedence over the printed words in the Acceptances.

■ Second, we determine whether the trial court erred in granting the summary judgment for defendants on the basis that the contract was unenforceable due to failure of consideration, by first ascertaining the contracts' consideration. Consideration is "an act or promise, bargained for and given in exchange for a promise.... For the mutual promises of the parties to a bilateral contract to constitute the consideration for each other, the promises must be binding on both parties." *Resource Management Co. v. Weston Ranch*, 706 P.2d 1028, 1036 (Utah 1985) (citations omitted). "It is not necessary for a promisee to make a payment in order for there to be consideration; the return promise to pay was sufficient consideration to form the contract." *Bank of Wallowa County v. Gary Mac, Inc.*, 49 Or.App. 403, 619 P.2d 1310, 1314 (1980). "Failure of consideration [as opposed to lack of consideration] exists 'wherever one who has either given or promised to give some performance fails

without his fault to receive in some material respect the agreed exchange for that performance.'" *Bentley v. Potter*, 694 P.2d 617, 619 (Utah 1984) (quoting 6 S. Williston, *The Law of Contracts* § 814, at 17–78 (3d ed. 1962)). If there is lack of consideration, there is no contract. When consideration fails, however, promised performance cannot be compelled. *General Ins. Co. of Am. v. Carnicero Dynasty Corp.*, 545 P.2d 502, 504 (Utah 1976).

In this case, we find that the final contracts between the parties are not ambiguous and contain mutual promises constituting the agreed-upon consideration. Defendants promised to pay the lease payments commencing on dates certain in exchange for Copper State's promise to advance the purchase price of the computers prior to delivery. Copper State furnished its promised consideration when it disbursed the $84,000.

Defendants rely on two Utah cases as support for the summary judgment. First, they cite *FMA Financial Corp. v. Hansen Dairy, Inc.*, 617 P.2d 327 (Utah 1980), an action for breach of a lease agreement. In *FMA Financial*, Hansen Dairy agreed to lease a silo and other farm equipment from FMA. The silo was not completely installed prior to the time it was needed for the harvest season. Nevertheless, Hansen Dairy had signed an acceptance notice stating that the leased goods had been delivered and were satisfactory. This Court found that the trial court did not err in considering parol evidence to determine when the silo was needed, because that evidence did not contradict the written document. The Court then found that there was a failure of consideration, despite testimony that FMA had paid the supplier of the leased silo and thought that the silo had been delivered, because the equipment was not, in fact, delivered.

In a subsequent case, suit was brought to rescind a lease for failure of consideration because the equipment delivered, a computer, was not the equipment described by serial number in the lease. *Nielsen v. MFT Leasing*, 656 P.2d 454 (Utah 1982). The lessee had signed an acknowledgment

described by the Court as follows: "The acknowledgment stated that the lease equipment had been delivered to [the lessees] and that [the lessees] had examined the equipment invoice and requested MFT to pay the amount of the invoice to the supplier Pursinger Company." *Id.* at 455. MFT paid the supplier, despite MFT's knowledge that the supplier had credit problems. Ultimately, another party claimed ownership of the computer delivered to the lessee. The Court found that "[e]vidence of failure of consideration does not vary or alter the terms of a contract; it attacks the very existence of the contract for the purpose of proving it unenforceable." *Id.* at 456. The Court found that acknowledgment of delivery did not defeat a claim of failure of consideration. The Court also examined evidence indicating that both parties were at fault to some extent in allowing the misdelivery. However, the Court sustained rescission of the lease, not because the lessor should have known better than to pay the supplier, but because "the trial court based its decision on the fact that MFT did not provide the equipment specified in the lease contract." *Id.* at 457.

The contracts in this case can be distinguished from those in *FMA Financial* and *Nielsen,* which found a failure of consideration where equipment subject to the lease was not delivered or the wrong equipment was delivered and the lessees had authorized payment to the supplier contemporaneously with erroneously acknowledging receipt of the equipment. In the instant case, all parties agreed that the equipment was not delivered, but the supplier was paid prior to delivery pursuant to the lessees' request and promise to pay. Also, as previously stated, the final modified contracts provided that delivery was not a condition precedent for payment by the lessees. *FMA Financial* and *Nielsen* are not, therefore, controlling because the contracts and the consideration differ. There was not a failure of consideration in this case barring enforcement of the contract or excusing performance by defendants, because they received the promised performance, or consideration, i.e., Copper State paid $84,-000 to Cowboy Computers.

Therefore, entry of summary judgment for defendants on Copper State's first cause of action was error. We reverse and remand for further consideration of Copper State's motion for summary judgment against defendants on the first cause of action. On remand, the trial court should also consider defendants' allegations in their amended answers that Gray and Graven acted as agents of Copper State and, together with Copper State, fraudulently induced defendants to enter into the lease agreements.

## II.  MISREPRESENTATION

■ Copper State also contends that the trial court erred in awarding judgment to defendants on its claim of misrepresentation. After trial, the court entered the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1.  The Court finds that Plaintiff has not sustained its burden to prove by preponderance of the evidence (or by clear and convincing evidence) its claims and allegations of the Second Cause of Action.

2.  That Defendants did not knowingly and/or with intent to deceive, authorize John Gray, Edward Graven, or any of their entities to use the funds coming from Plaintiff, in an investment scheme, in which Plaintiff had no knowledge.

3.  That Defendants did not willfully and intentionally omit to disclose to the Plaintiff that the funds that Plaintiff had delivered to John Gray and Eward [sic] Graven, or their entities, for the purchase of computers, were not, in fact, being used to purchase the computers, as said Defendants had no such knowledge.

4.  That John Gray and/or Edward Graven and/or any of their entities were not the agents of Defendants in connection with the use of the funds that were paid over to the said John Gray and Edward Graven from Plaintiff that went into the investment scheme of the said John Gray, Edward Graven or their entities.

From the foregoing Findings of Fact, the Court makes the following

## CONCLUSIONS OF LAW

1. A judgment should be entered in the Second Cause of Action in the above entitled case in favor of the Defendants and against the Plaintiff, no cause of action.

2. That Defendant [sic] should be entitled to recover their costs incurred herein.

On appeal of a judgment from the bench after trial, we defer to the trial court's factual assessment unless there is clear error. Utah R.Civ.P. 52(a); *State v. Walker*, 743 P.2d 191, 193 (Utah 1987). In order to prevail in a claim of misrepresentation, there must be

> a showing of a false representation of an existing material fact, made knowingly or recklessly for the purpose of inducing reliance thereon upon which plaintiff reasonably relies to his detriment. Misrepresentation may be made either by affirmative statement or by material omission, where there exists a duty to speak. Such a duty will not be found where the parties deal at arm's length, and where the underlying facts are reasonably within the knowledge of both parties. Under such circumstances, the plaintiff is obliged to take reasonable steps to inform himself, and to protect his own interests.

*Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980).

The record amply supports the court's finding that Copper State had failed to establish misrepresentation by defendants. Therefore, we affirm the court's judgment in favor of defendants on Copper State's second cause of action for misrepresentation.

Affirmed in part and reversed and remanded in part.

HOWE, Associate C.J. and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

HALL, C.J., having disqualified himself, does not participate herein; GREENWOOD, Court of Appeals Judge, sat.