PRUDENTIAL CAPITAL GROUP CO.,
fka Prudential Leasing Company,
Plaintiff and Appellee,

v.

John E. MATTSON, Defendant
and Appellant.

John E. MATTSON, Third–Party
Plaintiff and Appellant,

v.

KEY AIRLINES, Third–Party
Defendant and Appellee.

No. 890038–CA.

Court of Appeals of Utah.

Nov. 20, 1990.

Denver C. Snuffer, Jr. (argued), Maddox, Nelson & Snuffer, Murray, for defendant and appellant.

J. Bruce Reading, Marlon L. Bates (argued), Scalley & Reading, Salt Lake City, for plaintiff and appellee, Prudential Capital Group.

Gifford W. Price (argued), Salt Lake City, for third-party defendant and appellee, Key Airlines.

Before GARFF, JACKSON, and BULLOCK.[1] JJ.

## OPINION

GARFF, Judge:

Mattson, defendant and third party plaintiff, appeals from a judgment against him for breach of contract on a lease for an aircraft. He is the lessee in a lease agreement with plaintiff/appellee, Prudential Capital Group Co. (Prudential), and a sublessor in a lease agreement with third-party defendant/appellee, Key Airlines (Key), involving the same aircraft.

## FACTS

The parties engaged in a complex transaction involving the sale, lease and sublease of a 1982 Cessna Golden Eagle 421C aircraft. The transaction proceeded as follows: Key sold the aircraft to Prudential. Prudential leased the aircraft to Mattson for a period of eighty-two months. The lease required Mattson to (1) make eighty-two monthly payments of $11,458.40 plus a final payment of $340,000.00; (2) pay all property taxes; (3) pay late fees on rental payments more than five days late; (4) pay twenty-four percent interest per annum on all unpaid monthly rental payments; and (5) pay court costs and reasonable attorney fees. Mattson subleased the aircraft back to Key for a period of twenty-seven

months. Both leases contained integration clauses. The purpose of this arrangement was to create a tax shelter for Mattson. However, to qualify for the shelter, the sublease had to be for a period of time less than half the depreciable life of the aircraft, which for tax purposes was five years. Under the sublease, Key agreed to pay the property taxes during the term of the lease. When Key did not renew its sublease, Mattson could no longer make his payments and defaulted on his lease to Prudential. He also refused to pay the property taxes for 1985 and 1986. Prudential, pursuant to the terms of the agreement, terminated the lease and accelerated the monthly payments. It then repossessed and sold the aircraft for $259,772.00 and brought this action against Mattson for damages pursuant to the lease agreement.

The lower court awarded Prudential judgment, which included fifty-eight months of future lease payments totaling $664,587.20, a guaranteed residual of $340,000.00, late charges of $5,156.10, attorney fees of $17,079.00, court costs of $90.75, and prejudgment interest from date of sale to date of judgment at the agreed rate amounting to $246,461.69. The court then deducted proceeds from the sale of the airplane of $259,772.00 and the security deposit of $34,000.00, for a total net damage award of $979,602.74.[2]

Mattson argues that the judgment amount awarded under the lease acceleration clause is an unconscionable penalty and that he should have been ordered to pay only the net present value of the future lease payments, which he asserts to be $315,363.42, rather than the amount awarded. His second argument is that the trial court inappropriately ordered Key to pay the property taxes directly to Prudential rather than to him. His final claim is that the sublease with Key was modified by oral promises that Key would pay the property taxes and also allow a trade-in allowance of

---

1. J. Robert Bullock, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1990).

2. We note that if Mattson had complied with the terms of the lease he would have ultimately paid Prudential a total of $1,279,588.80.

$510,750.00, and therefore the trial court was inconsistent when it enforced the claim for property taxes against Key but did not enforce the other oral representations made at the time of the contract.

## STANDARD OF REVIEW

■■ This case involves the interpretation of an integrated lease and sublease, which Mattson asserts was modified by extrinsic evidence. If the contract is interpreted only by the words, it is a question of law and we accord the trial court's construction no particular weight. However, if the contract is ambiguous, and the trial court takes extrinsic evidence to determine the intent of the parties, then our review is strictly limited. *Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985); *50 West Broadway Assocs. v. Redevelopment Agency of Salt Lake*, 784 P.2d 1162 (Utah 1989); *Copper State Leasing Co. v. Blacker Appliance & Furniture Co.*, 770 P.2d 88 (Utah 1988). Because Mattson urges that a finding or a conclusion is unsupported by or is contrary to the evidence, he is required by Rule 11(e)(2) of the Rules of Appellate Procedure to include in the record a transcript of all evidence relevant to such finding or conclusion. Because Mattson did not file a transcript, we assume the correctness of the findings, *Fackrell v. Fackrell*, 740 P.2d 1318, 1319 (Utah 1987). We review the court's legal conclusions for consistency with the findings, giving them no deference. *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). *Wilderness Bldg. Systems, Inc. v. Chapman*, 699 P.2d 766, 769 (Utah 1985); *Sawyers v. Sawyers*, 558 P.2d 607, 608–09 (Utah 1976).

■ Where an appellant challenges the amount of damages awarded under the contract, we affirm the court's award of damages if there is substantial record evidence to support it. *Ringwood v. Foreign Auto Works, Inc.*, 786 P.2d 1350, 1360 (Utah Ct.App.1990) (citations omitted).

### The Acceleration Clause

The lower court found that both Prudential and Mattson entered into the lease agreement with the intention to be bound by it, that Mattson understood the terms and conditions of the agreement, that he had the counsel of an attorney and a certified public accountant, that he made monthly lease payments of $11,458.40 to Prudential through October 20, 1986, and that Prudential was entitled to a judgment against Mattson for $979,602.74, representing the damages resulting from Mattson's breach of the lease. This amount includes, among other things, $664,587.20 representing fifty-eight months of future lease payments and $246,461.69 for prejudgment interest.

■ Appellant disputes the calculation of the outstanding lease payments. He asserts that he produced documents at trial showing the present value of the lease to be $315,363.42. Prudential counters that Mattson's evidence as to present value was computed incorrectly. Absent a transcript, we accept the trial court's findings as to the proper method to calculate damages according to the contract.

■ We are left then to consider the unconscionability of the damages. Utah courts have consistently upheld the right of people to contract on their own terms without the paternalistic intervention of the courts to relieve a party from the effects of a bad bargain. *Carlson v. Hamilton*, 8 Utah 2d 272, 332 P.2d 989, 990 (1958). Specifically, provisions for liquidated damages have been upheld the same as other terms in the contract, except where the amount of liquidated damages "bears no reasonable relationship to the actual damage or is so grossly excessive as to be entirely disproportionate to any possible loss that might have been contemplated that it shocks the conscience. . . ." In such cases, the stipulation will not be enforced. *Warner v. Rasmussen*, 704 P.2d 559, 561 (Utah 1985) (footnote omitted); *Soffe v. Ridd*, 659 P.2d 1082, 1084 (Utah 1983) (liquidated damages of $20,725 do not bear a reasonable relationship to $5,895 actual damages); *Hutcheson v. Gleave*, 632 P.2d 815, 817–18 (Utah 1981) (upholding $40,000 award to vendors in rescission of land contract, where contract price was $962,500); *Young*

*Elec. Sign Co. v. Vetas,* 564 P.2d 758, 760 (Utah 1977) (upholding liquidated damages of $1,612.54 where signs cost over $7,000 to manufacture and install).

Here, we cannot compare actual damages against stipulated liquidated damages where the court made no findings as to actual damages and Mattson failed to transmit a transcript showing evidence presented on the issue. Mattson had both legal and financial advice. He was fully aware of the conditions and legal consequences of the leases. And even though his attorney advised him not to execute the sublease with Key because the term of the lease was shorter in duration than was his obligation to Prudential, he chose to ignore that advice and to execute both leases. Thus, he knew that if he defaulted, under the acceleration clause he could be immediately liable for all future payments plus interest at the rate of twenty-four percent per annum until paid. Mattson defaulted after making his last rental payment on October 20, 1986. Prudential terminated the lease and accelerated the remaining monthly payments on February 20, 1987. Judgment was entered on October 28, 1988. From our examination of the record, it appears that the trial court computed the amount of interest due on the unmade payments, $246,461.69, based on the above dates and pursuant to the terms of the lease. We find no abuse of discretion here.

Although the acceleration clause exacts a costly penalty from Mattson, it is not so costly as to shock the conscience, particularly when the full term value of the lease to Prudential would have been $1,279,-588.80.

> It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fair-minded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.

*Carlson,* 332 P.2d at 991.

### Mattson's Action Against Key

■ Finally, Mattson argues that this court should "correct the error" made by the trial court when it enforced the property tax payment and, at the same time, failed to enforce other oral representations, such as agreeing to renew the sublease and promising a trade-in allowance of $510,750. Mattson argues that either none of the oral representations should be enforceable or else they all should be. Thus, Mattson claims he is entitled to a cross-judgment for reimbursement by Key for the remaining net present value of the lease totaling $315,363.42.

Again, absent a transcript, we must assume that the trial court's findings of fact are correct. *Wilderness Bldg. Systems, Inc.,* 699 P.2d at 769. The trial court did not determine that Key should be responsible for payment of property taxes based on an oral representation. Rather, the trial court based this conclusion on a finding that Key and Mattson executed a writing reflecting Key's responsibility to pay property taxes amounting to $19,200.98. The court also found that the sublease was clear and unambiguous, and that there were no oral representations or promises modifying the sublease as to its term, renewal, or trade-in. Therefore we reject Mattson's assertion that the lower court was erroneously inconsistent.

### Property Taxes

■ Mattson urges this court to reverse the award of $19,000.00 in property tax payments from Key Airlines to Prudential and to require that Key Airlines pay this award directly to him. The trial court found there was a writing to the effect that "Key did agree to modify its agreement with Mr. Mattson ... to reflect Key's responsibility for the property taxes relative to the Cessna 421C aircraft, as opposed to that being the responsibility of Mr. Mattson, which property taxes ... amount to $19,200.98."

We find that the court's finding that Mattson did not have the responsibility to pay the taxes but Key did, and to have Key pay them directly to Prudential, is supported by the record.

Thus, we find that the trial court was correct in concluding that the acceleration clause is binding; that the award of damages is reasonable and did not impose an unconscionable penalty on Mattson; that Key was responsible for the property taxes and should pay them directly to Prudential; and that the sublease with Key, with the exception of the property taxes, was not modified.

Affirmed.

BULLOCK, J., concurs.

JACKSON, J., concurs in the result.