**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 14, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

XAVIER BRADLEY,

      Plaintiff Counter Defendant - Appellee,

v.

DHYBRID SYSTEMS, LLC, an Ohio limited liability company,

      Defendant - Appellant,

and

WORTHINGTON INDUSTRIES, INC., an Ohio corporation,

      Defendant Counterclaimant - Appellant.

No. 21-4047
(D.C. No. 2:18-CV-00486-BSJ)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **CARSON**, **BRISCOE**, and **ROSSMAN**, Circuit Judges.
_____

In any given contract, parties often make many promises to each other.  Courts

usually view these promises together as related parts of the same transaction.  But

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

when a contract's language indicates that the parties intended to create more than one distinct agreement, a court may find the parties' contract divisible.

Such a situation arises here. Defendants Worthington Industries and dHybrid Systems promised to pay Plaintiff Xavier Bradley $20,000 to drop a workers' compensation claim he had against them. They also promised to pay Plaintiff $100 to drop all other potential claims. Although Defendants paid the $20,000, they failed to pay the $100. So Plaintiff sued on his other claims. At summary judgment, the district court concluded that the two agreements were divisible and that Defendants' failure to pay the $100 allowed Plaintiff to rescind the second agreement. The Parties then stipulated for Plaintiff to take a $495,000 final judgment. Defendants now appeal the district court's summary judgment ruling, arguing that the settlement should have barred Plaintiff's claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

Plaintiff previously worked for Defendants. During his employment, Plaintiff filed a workers' compensation claim against Defendant Worthington and its insurance carrier, Phoenix Insurance Company. Also during his employment, Plaintiff alleges three of his coworkers racially harassed him in violation of Title VII. Defendants ultimately terminated Plaintiff, which Plaintiff claims was retaliation for reporting his abusers.

After his termination, Plaintiff hired different lawyers to pursue his claims—one an attorney who practiced almost exclusively workers' compensation cases, and the other a law firm that handled employment claims. He also filed a discrimination charge against Defendant Worthington with the Equal Employment Opportunity Commission (EEOC). The EEOC later issued Plaintiff a Notice of Right to Sue, authorizing him to sue Defendants in federal court.

Before Plaintiff sued on his discrimination claim, however, Defendant Worthington and its insurance carrier agreed with Plaintiff's workers' compensation attorney to settle Plaintiff's workers' compensation claim for $20,000. And as a condition of that settlement, Defendant Worthington also insisted that Plaintiff sign a full release of any other employment claims he had. But counsel for Defendant Worthington and its insurance carrier believed the Utah Labor Commission would reject any workers' compensation settlement containing such a release.[1] So he structured the settlement to consist of two separate agreements each supported by their own separate consideration. The first—the Compromise—released Plaintiff's workers' compensation claim for $20,000. The second—the Settlement Agreement—released all other claims Plaintiff had against Defendant Worthington for $100.

---

[1] Utah law requires all worker's compensation claims to be approved by the Utah Labor Commission. Utah Code § 34A-2-420.

Plaintiff signed both documents. Defense counsel, believing Plaintiff's workers' compensation attorney to be Plaintiff's only attorney, never informed Plaintiff's employment attorneys that Plaintiff signed a general release of claims.[2] And Plaintiff's workers' compensation attorney, also unaware of Plaintiff's employment attorneys, never informed them that Plaintiff signed the general release either.[3] The Commission approved the Compromise a few days later. One week after that, Defendant Worthington's insurance carrier timely paid the $20,000 due under the Compromise. But because of a clerical mistake, Defendant Worthington never paid the $100 due under the Settlement Agreement.

Several months later, the EEOC informed Plaintiff's employment attorneys that Plaintiff had settled his employment claims. And when Plaintiff's employment attorneys investigated the settlement, they learned that Defendant Worthington never paid Plaintiff the $100 to settle his employment claims. After discussions with Plaintiff, Plaintiff's employment-discrimination attorneys notified the company that Plaintiff rescinded the Settlement Agreement and planned to pursue his employment-discrimination claims. Only then, after receiving Plaintiff's letter, did Defendant Worthington send Plaintiff a check for the $100.

---

[2] Defendant Worthington, despite having received a demand letter from Plaintiff's employment attorneys, never informed its attorney that Plaintiff had retained separate counsel to represent him in connection with his employment claims.

[3] Nor did Plaintiff himself inform his employment attorneys of the general release.

But Plaintiff returned the $100, keeping his promise to sue Defendants instead. Before the district court, Defendants sought summary judgment, arguing that the Settlement Agreement prevented Plaintiff from suing them. Although Defendants acknowledged the missed payment, they argued that their failure to pay on time was not a material breach because they timely paid $20,000 out of $20,100 owed from both agreements, which Defendant's asserted merged into one integrated contract. Plaintiff sought partial summary judgment. He contended that even if the parties integrated the agreements, Defendant Worthington failed to keep its promise to pay the $100 consideration and thus materially breached.

The district court granted Plaintiff's partial summary judgment motion, first finding the Compromise and the Settlement Agreement divisible. It then held that Plaintiff properly rescinded the Settlement Agreement because Defendant Worthington failed to pay the $100, a material term of the Settlement Agreement. Defendants appeal.

## II.

We review a district court's decision to grant summary judgment de novo, applying the same standard as the district court. Water Pik, Inc. v. Med-Sys., Inc., 726 F.3d 1136, 1143 (10th Cir. 2013). We will affirm summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the parties have agreed Utah state law governs the interpretation of their contract, we

5

analyze the substantive legal questions associated with their dispute under Utah law. Flood v. ClearOne Commc'ns, Inc., 618 F.3d 1110, 1117 (10th Cir. 2010). And we review the district court's answers to those substantive legal questions de novo. Id.

### III.

Defendants argue that the Compromise and Settlement Agreement comprise one integrated agreement they substantially performed by timely paying nearly all the money owed. We disagree and hold that the agreements are divisible under Utah law. We further hold Plaintiff could rescind the Settlement Agreement because Defendant Worthington did not pay the promised $100 consideration.

### A.

Defendants assert that the district court erred in finding the Settlement Agreement and Compromise divisible because the agreements are integrated. They argue that because the Settlement Agreement's plain language incorporates the Compromise, the two documents are one, final contract. And because Defendants paid $20,000 of the $20,100 owed to Plaintiff, Defendants contend that they did not materially breach their contract with Plaintiff. Thus, Defendants conclude, without a material breach, Plaintiff could not rescind the contract and sue them for his employment claims.

This argument lacks merit. Divisibility and integration are unrelated concepts. Whether two writings form an integrated agreement determines if the parol evidence rule applies. See Tangren Fam. Tr. v. Tangren, 182 P.3d 326, 330–32 (Utah 2008)

6

(exemplary integration analysis); 11 Williston on Contracts, § 33:14 (4th ed.) ("the parol evidence rule applies only when parties integrate their agreement").  On the other hand, a divisible contract is "in legal effect, independent agreements about different subjects though made at the same time."  iDrive Logistics LLC v. IntegraCore LLC, 424 P.3d 970, 986 (Utah Ct. App. 2018) (quoting In re Payless Cashways, 203 F.3d 1081, 1085 (8th Cir. 2000)).  Whether the contract at issue consists of a single document—or two documents unambiguously incorporating each other—is largely immaterial to whether that contract is divisible.  See Est. Landscape & Snow Removal Specialists, Inc. v. Mountain States Tel. & Tel. Co., 844 P.2d 322, 328–31 (Utah 1992) (analyzing whether a single contract for snow removal was divisible); 15 Williston on Contracts, § 45:1 (4th ed.) ("a divisible contract. . . is always an 'entire' contract in the sense of being one and not several contracts").

For that reason, the key issue in this case is whether the Settlement Agreement and Compromise, even if one contract, are divisible.  Whether a contract is divisible is a question of law that turns on the intent of the parties at the time they entered the contract.  Est. Landscape & Snow Removal Specialists, 844 P.2d at 328 (collecting cases).  To determine their intent, we turn first to the agreement's plain language.  Id.  And to this end, we note that the distinguishing feature of a divisible contract is that it divides each party's consideration into two or more corresponding parts.  Brown v. Bd. of Educ. of Morgan Cnty. Sch. Dist., 560 P.2d 1129, 1131 (Utah 1977) (citing 6 Williston on Contracts, § 860 (3rd ed.)).

Here, the plain language of the Compromise and Settlement Agreement establishes that the parties intended to enter "independent agreements about different subjects though made at the same time." iDrive, 424 P.3d at 986. In the Compromise, Defendant Worthington and its insurance carrier, Phoenix, agreed to settle Plaintiff's "alleged industrial claims"—meaning his workers' compensation claim—for a "lump sum consideration totaling $20,000." In the Settlement Agreement, Defendant Worthington agreed to pay Plaintiff $100, "which amount shall constitute full and complete payment," to settle "any and all" other claims he might bring against the company. Even if we treat the Compromise and the Settlement Agreement as if they were a single document, its plain language would still apportion the parties' consideration into two distinct sets of reciprocal promises. And the drafting attorney concedes that when he drafted the agreements, he intended to do exactly that.[4] Thus, we agree with the district court that the agreements are divisible. See Brown, 560 P.2d at 1131.

---

[4] Defendant insists that the parol evidence rule bars us from considering the drafting attorney's testimony. But the parol evidence rule only excludes evidence offered for the purpose of "varying or adding to the terms of an integrated contract." Tangren, 182 P.3d at 330. So while we look first to the contract's plain language, we remain free to consider extrinsic evidence offered to show the parties' intent to create a divisible contract. See, e.g., Mgmt. Servs. Corp. v. Dev. Assocs., 617 P.2d 406, 408 (Utah 1980). And in this case, even if we were to look only to the plain language of the parties' contract, the result would be the same.

B.

Having concluded that the agreements, even if integrated, are divisible, the question becomes whether Defendant Worthington failed to perform his end of the bargain and thus materially breached the part of the contract that required it to pay Plaintiff $100.

"The formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Aquagen Int'l, Inc. v. Calrae Tr., 972 P.2d 411, 413 (Utah 1998). Utah law defines consideration as "an act or promise, bargained for and given in exchange for a promise." Coulter & Smith, Ltd. v. Russell, 966 P.2d 852, 859 (Utah 1998). Under Utah law, one party can rescind a contract if the other party materially breaches it. See McArthur v. State Farm Mut. Auto. Ins. Co., 274 P.3d 981, 987 (Utah 2012) (citing Polyglycoat Corp. v. Holcomb, 591 P.2d 449, 451 (Utah 1979)). The "failure of consideration" is always a material breach. See Aquagen, 972 P.2d at 414 (Utah 1998).[5] Indeed, "[i]t

_____

[5] The idea of a failure of consideration—or better put, a failure of performance—is distinct from that of a lack of consideration. See General Ins. Co. of Am. v. Carnicero Dynasty Corp., 545 P.2d 502, 504 (Utah 1976) ("Where consideration is lacking, there can be no contract. Where consideration fails, there was a contract when the agreement was made, but because of some supervening cause, the promised performance fails"); see also Puckett v. United States, 556 U.S. 129, 137 (2009) ("When the consideration for a contract fails—that is, when one of the exchanged promises is not kept—we do not say that the voluntary bilateral consent to the contract never existed, so that it is automatically and utterly void; we say that the contract was broken. The party injured by the breach will generally be entitled to some remedy, which might include the right to rescind the contract entirely; but that is not the same thing as saying the contract was never validly concluded.") (internal citations omitted).

9

is entirely permissible for a party to rescind a contract based on a failure of consideration." Id. (citing Nielsen v. MFT Leasing, 656 P.2d 454, 457 (Utah 1982)). The failure of consideration occurs when "one who has either given or promised to give some performance fails without his fault to receive in some material respect the agreed exchange for that performance." Id. at 414 (quoting Copper State Leasing Co. v. Blacker Appliance & Furniture Co., 770 P.2d 88, 91 (Utah 1988) (internal quotation marks omitted)).

Like Defendant Worthington, the contract in Aquagen required the defendant to pay for rights he received from the contract. Id. But he never paid. Id. Because the defendant "failed to perform the only obligation required of him in the contract," the Utah Supreme Court held that he "committed an 'uncured material failure' sufficient to render the contract unenforceable for failure of consideration." Id. The same reasoning applies here. The only promise Defendant Worthington made in exchange for Plaintiff releasing his other employment claims was to pay Plaintiff $100. And at the time Plaintiff rescinded the contract—five months after the parties signed the Settlement agreement—Defendant Worthington still had not performed. That failure of performance was material breach of a divisible part of the parties' agreement, allowing Plaintiff to validly rescind that portion of their contract.

Simply put, after settling Plaintiff's employment claims for $100, Defendant Worthington failed to uphold its end of the bargain. We therefore hold that the

10

district court correctly granted partial summary judgment in Plaintiff's favor.

AFFIRMED.

Entered for the Court


Joel M. Carson III
Circuit Judge